125 N.J. Super. 519 (1973)
312 A.2d 154
THE TOWNSHIP OF SPARTA, IN THE COUNTY OF SUSSEX, A MUNICIPAL CORPORATION OF THE STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
LAWRENCE SPILLANE, ROY CONIGIOONE, JOHN DECKER, ARTHUR E. WALTERS, AND MARSHALL JOHNSON, DEFENDANTS-APPELLANTS. TOWNSHIP OF MOUNT OLIVE, A MUNICIPAL CORPORATION OF THE STATE OF NEW JERSEY, AND RICHARD I. MIDGETTE, GEORGE D. SWANSON, ANN L. MADDEN, WALTER LATA AND DANIEL F. LEAHY, BEING THE COMMITTEE OF THE PETITIONERS, AND THE TOWNSHIP CLERK, GRACE HILPERT, PLAINTIFFS-APPELLANTS,
v.
LAKELAND INDUSTRIAL PARK, INC., A NEW JERSEY CORPORATION, AND AMUSEMENT CORPORATION OF AMERICA, A DELAWARE CORPORATION, DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued September 11, 1973.
Decided October 25, 1973.
*520 Before Judges CARTON, SEIDMAN, and GOLDMANN.
Mr. Gerald B. Hanifan argued the cause for appellants Spillane et al. (A-371-72).
Mr. Frank L. Patti argued the cause for respondent Township of Sparta (A-371-72).
Mr. Herbert A. Vogel argued the cause for appellants Township of Mount Olive and Grace Hilpert, Township *521 Clerk (Messrs. Vogel, Chait & Wacks, attorneys) (A-1616-72).
Mr. Richard B. Girdler argued the cause for appellants Midgette et al. (Messrs. Dunn and Infinito, attorneys; Messrs. Warren E. Dunn and Richard B. Girdler, on the brief) (A-1616-72).
Mr. Arnold M. Smith argued the cause for respondents Lakeland Industrial Park, Inc. et al. (A-1616-72).
The opinion of the court was delivered by CARTON, P.J.A.D.
The issue to be resolved in these appeals is whether the referendum procedure provided for in the Faulkner Act applies to an amendment to the zoning ordinance of a municipality which has adopted the provisions of that act. The Township of Sparta and Township of Mount Olive cases involve this identical issue. Consequently they will be considered together, although they have not been formally consolidated.
Sparta has operated since 1960 under the Council-Manager Plan B of the Faulkner Act, N.J.S.A. 40:69A-99 et seq. On April 12, 1972 the township council adopted an amendment to its zoning ordinance authorizing a Planned Unit Development (P.U.D.) pursuant to N.J.S.A. 40:55-55 to 67. The plans for the P.U.D. were originally proposed by a subsidiary of a large corporation owning about 2,000 acres in Sparta.
The amendatory ordinance was referred to and acted upon favorably by the planning board after extended public hearings. Thereafter defendants in the Sparta action filed a petition with the municipal clerk seeking a referendum pursuant to N.J.S.A. 40:69A-185. The petition was found sufficient by the township clerk to comply with N.J.S.A. 40:69A-187, whereupon Sparta Township sought a declaratory judgment to determine whether the referendum provisions *522 of the Faulkner Act were applicable to amendments of a zoning ordinance. The trial judge granted the township's motion for summary judgment, holding that such provisions were not applicable.
Mount Olive Township operated under the Mayor and Council Plan E of the Faulkner Act, N.J.S.A. 40:69A-68 to 73. On August 25, 1972 the township council, over strong opposition, adopted an ordinance amending the township zoning ordinance by establishing a new zone denominated C-R (Commercial-Recreational). Permissible uses in this zone included permanent year-round or seasonal amusement parks. Two of the defendants in the Mount Olive case own about two-thirds of the land in the newly created C-R zone on which they intend to construct and operate a major amusement park. The lands in question are located near Interstate Route 80 and were originally zoned for industrial uses.
The amendment was approved by the mayor after its passage by the council. On September 18 the plaintiffs in the Mount Olive case filed a petition with the township clerk for a referendum on the amendatory ordinance. This petition was found to comply with the statutory requirement.
As in the Sparta action, a declaratory judgment was sought by the municipality as to the applicabilty of the referendum procedures to the ordinance. The trial judge ruled in this case, as did the trial judge in the Sparta litigation, that the referendum procedure was not applicable.
The issue raised here presents a question not directly decided before in New Jersey. The Faulkner Act, in pertinent part, provides:
The voters shall also have the power of referendum which is the power to approve or reject at the polls any ordinance submitted by the council to the voters or any ordinance passed by the council, against which a referendum petition has been filed as herein provided. No ordinance passed by the municipal council, except when otherwise required by general law or permitted by the provisions of section 17-32(b) of this act, shall take effect before twenty days from the time of its final passage and its approval by the mayor where such approval is required. * * * [N.J.S.A. 40:69A-185] *523 A companion section of the statute (N.J.S.A. 40:69A-184) provides a slightly different procedure for expressing public participation in municipal government through the initiative process:
The voters of any municipality may propose any ordinance and may adopt or reject the same at the polls, such power being known as the initiative. * * *
The Faulkner Act was adopted in order to encourage public participation in municipal affairs in the face of normal apathy and lethargy in such matters. The act gave municipalities the option of choosing one form or another of local government best suited to its needs. It was a legislative demonstration of the democratic ideal of giving the people the right of choosing the form of government they preferred and the opportunity to exercise the powers under that form to the furthest limits. Some 76 of the 567 municipalities of this State have adopted one form or another of the forms of government authorized under the Faulkner Act.
The initiative and referendum processes authorized by the act comprise two useful instruments of plebiscite power and provide a means of arousing public interest. Ordinary rules of construction would, of course, dictate that such provisions should be liberally construed. See 5 McQuillin, Municipal Corporations, § 16.48 at 199-200 (1969), where the author advocates that these procedures should be respected and given wide use if possible. It should be noted, however, that he adds a caveat that any grant of the power of initiative and referendum and its exercise are subject to and must be construed with governing constitutional and statutory provisions. 5 McQuillin, supra, at § 16.50. See also Newark v. Department of Civil Service, 68 N.J. Super. 416, 425 (App. Div. 1961); Cuprowski v. Jersey City, 101 N.J. Super. 15, 27 (Law. Div. 1968), aff'd 103 N.J. Super. 217 (App. Div. 1968).
*524 Undeniably, zoning issues often are of great public interest and some, as in the present case, may concern the entire population of the municipality involved. In both the cases before us it has been argued forcefully that the proposed ordinances change or alter the complexion of the municipalities. Thus, the ultimate question is whether major decisions should be made by the planning boards and governing bodies, with only voiced public approval or dissent as prescribed in the Zoning Act, or whether they should be open to a final decision by the vote of the entire population. This issue pits the philosophy of comprehensive zoning planned by a panel of experts and adopted by elected and appointed officials, against the philosophy of a wider public participation and choice in municipal affairs.
Other states faced with similar problems of referendum provisions have arrived at conflicting determinations. See generally, 42 Am. Jur.2d, Initiative and Referendum, § 9 at 657; Annotation, "Referendum  Nature of Ordinance," 122 A.L.R. 769 (1939). However, the decisions of other states furnish little aid here since the laws of the states involved differ in substantial respects from the New Jersey statutes.
Our consideration of the applicability of the referendum provided for in the Faulkner Act to the zoning procedure logically should begin with an examination of the treatment accorded by our courts to the companion process of the initiative. Smith v. Livingston Tp., 106 N.J. Super. 444 (Ch. Div. 1969), aff'd o.b. 54 N.J. 525 (1969), held that the initiative was not applicable to amendatory zoning ordinances. In so holding, Judge Mintz found that the zoning statutes represented an exclusive grant of power by the Legislature to municipalities generally and was not impliedly superseded by the later adopted Faulkner Act. He noted that the Zoning Act is specific in detailing the manner in which zoning ordinances may be amended; that steps in the zoning procedure include consideration by the municipal planning *525 board, the opportunity of property owners to object, and approval by the governing body. He also pointed out that in the event of objection by the property owners involved, a vote of two-thirds of the governing body is required to effect a change in the zoning ordinance (N.J.S.A. 40:55-34 to 35). He likewise observed that the initiative and referendum provisions in the Faulkner Act contain no specific reference to zoning. He concluded that if the initiative procedure were allowed to be applied to zoning matters, it would "disregard the valuable expertise of the planning board, and permit the electorate to defeat the beneficent purpose of the comprehensive zoning ordinance." 106 N.J. Super. at 457.
Appellants argue that a referendum is sufficiently dissimilar to an initiative as to justify treating it differently. They stress the fact that a referendum merely adds an additional stage which follows the governing body's approval and does not, as in the case of the initiative, provide a substitute for legislative action by the governing body. Consequently, they reason, a proposed zoning change should no more than any other legislative act be immune from further public examination. They point also to the fact that the planning board would not be altogether by-passed as in the case of initiative since a referendum begun by a petitioner would not occur until after the adoption of the zoning amendment and such adoption could not occur until the planning board had reviewed the amendment and made its recommendation. N.J.S.A. 40:55-35 and N.J.S.A. 40:69A-185.
These arguments have some cogency. However, we conclude that essentially the same considerations which bar application of the initiative process to zoning ordinance amendments apply in the case of the referendum.
Zoning is intended to be accomplished in accordance with a comprehensive plan and should reflect both present and prospective needs of the community. See Rudderow v. Mt. *526 Laurel Tp., 121 N.J. Super. 409 (App. Div. 1972); Bellings v. Denville Tp., 96 N.J. Super. 351 (App. Div. 1967). Among other things, the social, economic and physical characteristics of the community should be considered. The achievement of these goals might well be jeopardized by piecemeal attacks on the zoning ordinances if referenda were permissible for review of any amendment. Sporadic attacks on a municipality's comprehensive plan would tend to fragment zoning without any overriding concept. That concept should not be discarded because planning boards and governing bodies may not always have acted in the best interest of the public and may not, in every case, have demonstrated the expertise which they might be expected to develop.
The spirit and thrust of Smith v. Livingston Tp., supra, requires treatment of both processes in the same fashion in their relation to the zoning procedure. Such considerations stem from the exclusivity and uniqueness of the Zoning Act itself (and the related Planning Act) and the Legislature's evident intention of providing uniformity of procedure for all municipalities in the State in zoning matters.
Thus, the Legislature has authorized governing bodies of municipalities to establish administrative agencies to assist them in the performance of functions in this area and has laid down very specific and detailed procedure to be followed by all governmental bodies in carrying out such functions. Such comprehensive and precise treatment demonstrates the special concern of the Legislature in this important area of municipal regulation.
Moreover, certain aspects of the zoning statute seem inherently incompatible with the referendum process. N.J.S.A. 40:55-35 provides three avenues by which an amendment to a zoning ordinance may be effected; first, following approval by the planning board the governing body passes the amended ordinance; second, upon rejection by the planning board the amended ordinance may be approved by two-thirds of the governing body; third, should at least *527 20% of the landowners directly or contiguously affected by the proposed amendment object, the governing body must pass the amended ordinance by a two-thirds vote. A zoning ordinance amendment does not become operative unless the planning board and governing body have acted. See Abel v. Elizabeth Bd. of Works, 63 N.J. Super. 500 (App. Div. 1960). Whether the referendum stems from a submission of an ordinance by the governing body directly to the voters or by a referendum petition filed by the necessary number of voters, the so-called veto power of the planning board or protesting landowners would be rendered meaningless. A simple majority of the voters would be all that was necessary to approve or disapprove the ordinance.
We are not satisfied that the publicity which might accompany the referendum campaign and the exposure and discussion of the issues generated thereby justify disregarding these procedural requirements. Cf. Meridian Development Co. v. Edison Tp., 91 N.J. Super. 310 (Law Div. 1966). See Lionshead Lake, Inc. v. Wayne Tp., 10 N.J. 165, 179 (1952); Ward v. Scott, 16 N.J. 16, 23 (1954). In this connection we note that the zoning statute requires public notice of proposed zoning changes (N.J.S.A. 40:55-34). Moreover, from common experience we know that zoning amendments of a controversial nature, especially those which may greatly affect the entire population of the community, are often widely discussed and vigorously debated at the public hearings prior to adoption.
In arriving at this conclusion, we find it unnecessary to decide whether the Zoning Act is a "general law" as that term is used in N.J.S.A. 40:69A-181:
(a) Except as may otherwise be provided in this act, all ordinances shall be adopted and published in the manner required by general law * * *. [Emphasis added]
In this connection we note that the Zoning Act provides a somewhat different procedure for the publication of zoning *528 amendments (N.J.S.A. 40:55-34) than is provided for passage of ordinances generally (N.J.S.A. 40:49-2). See Stirling v. Plainfield, 134 N.J.L. 485 (Sup. Ct. 1946), rev'd on other grounds 136 N.J.L. 38 (E. & A. 1947).
Both judgments appealed from are affirmed.